UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Linda Marie McClure,<br><br>                                    Plaintiff,<br><br>v.<br><br>Commissioner of Social Security,<br><br>                                    Defendant. | Case No.: 15cv1312-LAB-RBB<br><br>**REPORT AND RECOMMENDATION GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [ECF NO. 15] AND DENYING DEFENDANT'S CROSS MOTION FOR SUMMARY JUDGMENT [ECF NO. 19]** |

On June 15, 2015, Plaintiff Linda Marie McClure ("Plaintiff"), commenced this action against Defendant Commissioner of Social Security for judicial review under 42 U.S.C. § 405(g) of a final adverse decision for social security benefits. (Compl. 1, ECF No. 1.) Defendant filed an Answer and the Administrative Record on November 13, 2015 [ECF. Nos. 12, 13].

On January 14, 2016, McClure filed a Motion for Summary Judgment [ECF No. 15]. The Commissioner's Cross-Motion for Summary Judgment was filed on March 16, 2016 [ECF No. 19]. Defendant also filed a Response in Opposition to Plaintiff's Motion for Summary Judgment [ECF No. 20]. On March 29, 2016, Plaintiff filed a Reply [ECF No. 21].

1

The Court has taken the motions under submission without oral argument [ECF No. 18]. For the following reasons, the Court recommends that Plaintiff's Motion for Summary Judgment be **GRANTED**, Defendant's Cross-Motion for Summary Judgment be **DENIED**, and the case be **REMANDED** for further proceedings.

## I.  BACKGROUND

On December 12, 2011, Plaintiff Linda McClure protectively filed an application for disability insurance benefits under Title II of the Social Security Act, alleging she has been disabled since March 10, 2010. (Admin. R. 179-80,[1] ECF No. 13.) Plaintiff alleged she suffers from a brain aneurism, high blood pressure, and depression. (Id. at 53.) Her application was denied on initial review and again on reconsideration. (Id. at 82-86, 89-93, 96.)

A video hearing before the Administrative Law Judge Michael Radensky was held on September 6, 2013. (Id. at 30.) Plaintiff appeared with her attorney. (Id. at 32.) At the time of the hearing, McClure was fifty-two years old and in the age category classified as "closely approaching advanced age." (Id. at 21, 34.) She completed eleventh grade and is able to read and write. (Id. at 34.) The ALJ found that Plaintiff has limited education and can communicate in English. (Id. at 21.) McClure testified that she last worked in 2010 as an MTS bus driver. (Id. at 32-33.)

Plaintiff explained that she stopped working because she had an aneurism. (Id. at 33.) She testified that she was in constant pain following surgery and could sit for only thirty minutes at a time. (Id. at 35.) McClure stated that she had pain in the groin and right leg due to a punctured vein during her surgery. (Id. at 36.) She testified that she also experienced pain in her left leg. (Id.) McClure stated she could stand for ten minutes before she experienced pain. (Id.) Plaintiff testified that her pain medication

---

[1] The administrative record is filed on the Court's docket as multiple attachments. The Court will cite to the administrative record using the page references contained on the original document rather than the page numbers designated by the Court's CM/ECF system.

made her drowsy and she took naps throughout the day. (Id. at 38.) She explained that she spends her typical day "[s]itting down." (Id. at 41.)

A vocational expert, David Rinehart, also testified. (Id. at 48.) He described McClure's past work as semi-skilled with an exertional work level at medium to heavy. The expert stated that Plaintiff would not be able to perform her past work as bus or van driver. (Id. at 48-49.) The ALJ asked then asked the expert several hypothetical questions.

> Q     Okay. All right.  So if we were to assume a hypothetical individual who is closely approaching advanced age, has a limited education, and the past work you just identified, and if we were to assume for our first hypothetical that this individual was limited to light work as defined in the regulations; occasional postural activities, no ladders, ropes or scaffolds; no unprotected heights or dangerous machinery.  If those are our only limitations, could such an individual perform any of the past work?
>
> A     No, Your Honor, could not.
>
> Q     Would there be other work at the light exertional level that such an individual could perform?
>
> A     There would be light, unskilled, entry-level work consistent with the hypothetical such as assembler, small products I, code is 706.684-022, light, unskilled, SVP 2, numbers in the nation 302,700. Second example housekeeping/cleaner, the code 323.687-014, that was light and unskilled at SVP 2, numbers in the nation 679,600. And a third example garment sorter, garment sorter is code 222.687-014, this job is light and unskilled at SVP 2, numbers in the nation 55,600.
>
> Q     All right.  Same individual, same limits of standing and walking are reduced to two hours in an eight-hour day, how would it affect the jobs you identified?
>
> A     The garment sorter and the housekeeping/cleaner would be eliminated all together.  The assembler, small products I would not be eliminated but there would be a 50 percent erosion in the numbers bringing the revised numbers to 152,000.
>
> Q     Okay. Would there be another light exertional job that could be

1  performed within that functional capacity?

2  A     Yes.  Electronics worker, the code for electronics worker is 276.687-
3  010, this job is light and unskilled at SVP 2, numbers in the nation 33,000.
   And a third example information—or another example, substitute,
4  information clerk, this is code 237.367-018, the job is light and unskilled at
5  SVP 2, numbers in the nation 83,200.

6  Q     Okay.  And those numbers are reflecting the need to sit most of the
7  day?

8  A     Yes.
9
10 Q     Now, are there any skills acquired from the records that are
   transferrable to sedentary work?
11
12 A     No, Your Honor.

13 Q     All right.  So the same individual as in hypo two but this individual
   requires frequent breaks in order to alleviate pain predominantly in the lower
14 extremities, and this is in excess of regularly scheduled breaks.  How would
15 it affect the jobs you identified?

16 A     It would eliminate all of them, Your Honor.
17
18 Q     And would there be other work that would allow for those breaks?

19 A     There would not be.

20 (Id. at 49-51.)

21      On September 24, 2013, Judge Radensky issued a decision finding that McClure
22 was not entitled to a period of disability or disability insurance benefits under sections
23 216(i) and 223(d) of the Social Security Act.  (Id. at 23.)  The ALJ found that Plaintiff
24 met the insured status requirements of the Social Security Act through December 31,
25 2015.  (Id. at 15.)  He also found that she had not engaged in substantial gainful activity
26 since March 10, 2010.  (Id.)  Judge Radensky concluded that Plaintiff's history of brain
27 aneurism, peripheral vascular disease, and hypertension were severe impairments.  (Id.)
28 But McClure's mood disorder was not a severe impairment.  (Id. at 15-16.)  The ALJ

concluded that, singly or in combination, McClure did not have impairments that met or medically equaled a listing. (Id. at 17.) Judge Radensky found that Plaintiff had the residual functional capacity to perform light work, with "occasional performance of postural activities; no ladders, ropes, or scaffolds; no unprotected heights or dangerous machinery; and standing, and/or walking two hours out of an eight-hour workday." (Id.)

On October 29, 2013, Plaintiff requested that the Appeals Council reconsider the decision of the administrative law judge. (Id. at 8-9.) On April 9, 2015, the Office of Disability Adjudication and Review notified McClure that the Appeals Council had upheld the ALJ's decision. (Id. at 1-7.)

## II.  STANDARD OF REVIEW

Sections 405(g) and 421(d) of the Social Security Act allow unsuccessful applicants to seek judicial review of a final agency decision of the Commissioner. 42 U.S.C.A. §§ 405(g), 421(d) (West 2011). The scope of judicial review is limited, however, and the denial of benefits "'will be disturbed only if it is not supported by substantial evidence or is based on legal error.'" Brawner v. Sec'y of Health & Human Servs., 839 F.2d 432, 433 (9th Cir. 1988) (quoting Green v. Heckler, 803 F.2d 528, 529 (9th Cir. 1986)).

Substantial evidence means "'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Sandqathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997) (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)). The court must consider the entire record, including the evidence that supports and detracts from the Commissioner's conclusions. Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 576 (9th Cir. 1988). If the evidence supports more than one rational interpretation, the court must uphold the ALJ's decision. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984). When the evidence is inconclusive, "'questions of credibility and resolution of conflicts in the testimony are functions solely of the Secretary.'" Sample v. Schweiker,

1   694 F.2d 639, 642 (9th Cir. 1982) (quoting Waters v. Gardner, 452 F.2d 855, 858 n.7 (9th
2   Cir. 1971)).
3         The ALJ has a special duty in social security cases to fully and fairly develop the
4   record in order to make an informed decision on a claimant's entitlement to disability
5   benefits.  DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991).  Because disability
6   hearings are not adversarial in nature, the ALJ must "inform himself about the facts
7   relevant to his decision," even if the claimant is represented by counsel.  Dixon v.
8   Heckler, 811 F.2d 506, 510 (10th Cir. 1987) (quoting Heckler v. Campbell, 461 U.S. 458,
9   471 n.1 (1983) (Brennan, J., concurring).
10         The district court may affirm, modify, or reverse the Commissioner's decision.  Id.
11   The court should affirm the decision unless "it is based upon legal error or is not
12   supported by substantial evidence."  Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th
13   Cir. 2005) (citing Tidwell v. Apfel, 161 F.3d 599, 601 (9th Cir. 1999)).  A district court
14   may remand a Social Security disability decision under sentence four of 42 U.S.C.
15   § 405(g).  Hoa Hong Van v. Barnhart, 483 F.3d 600, 605 (9th Cir. 2007).  That provision
16   states, "The court shall have power to enter, upon the pleadings and transcript of the
17   record, a judgment affirming, modifying, or reversing the decision of the Commissioner
18   of Social Security, with or without remanding the cause for a rehearing."  42 U.S.C.A.
19   § 405(g).  "A remand under sentence four is 'essentially a determination that the agency
20   erred in some respect in reaching a decision to deny benefits[]' . . . ."  Hoa Hong Van v.
21   Barnhart, 483 F.3d at 605 (quoting Akopyan v. Barnhart, 296 F.3d 852, 854 (9th Cir.
22   2002)).
23         After a case is remanded and an additional hearing is held, the Commissioner may
24   modify or affirm the original findings of fact or the decision.  42 U.S.C.A. § 405(g).
25   A remand to the Commissioner for further proceedings or to award benefits is within the
26   court's discretion.  McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989).  "'If
27   additional proceedings can remedy defects in the original administrative proceedings, a
28   social security case should be remanded.  Where, however, a rehearing would simply

delay receipt of benefits, reversal [and an award of benefits] is appropriate.'" Id. (alteration in original) (quoting Lewin v. Schweiker, 654 F.2d 631, 635 (9th Cir. 1981)). As a matter of administrative law, "the proper course, except in rare circumstances, is to remand to an administrative agency for additional investigation or explanation." INS v. Ventura, 537 U.S. 12, 16 (2002) (internal quotation marks and citation omitted).

### III.   DISCUSSION

**A.   Legal Standard**

To qualify for disability benefits under the Social Security Act, an applicant must show two things: (1) He or she suffers from a medically determinable impairment that can be expected to last for a continuous period of twelve months or more, or would result in death; and (2) the impairment renders the applicant incapable of performing the work that he or she previously performed or any other substantially gainful employment that exists in the national economy. See 42 U.S.C.A. §§ 423(d)(1)(A), (2)(A) (West 2011). An applicant must meet both requirements to be classified as "disabled." Id.

The Commissioner makes this assessment by a five-step analysis outlined in 20 C.F.R. § 404.1520 (West 2012). See also Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999) (describing five steps). First, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. 20 C.F.R. § 404.1520(b). Second, the Commissioner determines whether the claimant has a "severe impairment or combination of impairments" that significantly limits the claimant's physical or mental ability to do basic work activities. If not, the claimant is not disabled. Id. § 404.1520(c). Third, the medical evidence of the claimant's impairment is compared to a list of impairments that are presumed severe enough to preclude work; if the claimant's impairment meets or equals one of the listed impairments, benefits are awarded. Id. § 404.1520(d). Fourth, if the impairment meets or equals one of the listed impairments, the Commission determines whether the claimant can do his past relevant work. If the claimant can do his past work, benefits are denied. Id. § 404.1520(e). If the claimant cannot perform her past relevant work, the burden

shifts to the Commissioner. In step five, the Commissioner must establish that the claimant can perform other work. Id. § 404.1520(f). If the Commissioner meets this burden and proves that the claimant is able to perform other work that exists in the national economy, benefits are denied.

**B.  Plaintiff's Claims**

McClure argues that ALJ's determination of Plaintiff's residual functional capacity ("RFC") is contrary to law and not supported by substantial evidence. (Pl.'s Mot. Summ. J. Attach. #1 Mem. P. & A. 5, ECF No. 15.) She also claims that the ALJ improperly rejected the treating physician's medical opinion. (Id. at 10-19.)

1. The RFC Finding

Plaintiff claims that the evidence in the record does not support the finding that McClure has the RFC to perform light work. (Id. at 5.) She contends that the ALJ's descriptions of McClure's limitations are consistent with the Commissioner's definition of sedentary work. (Id.) Specifically, Plaintiff argues that ALJ erred at step five in finding her capable of light work because the ALJ also found that Plaintiff can stand or walk for no more than two hours in total over the course of an eight-hour workday. (Id. at 6.) McClure argues that this difference is outcome determinative because a finding that Plaintiff is capable of only sedentary work would direct a finding that she is disabled as a matter of law. (Id.)

Plaintiff contends that the ALJ's finding that McClure is limited to standing or walking for two hours is inconsistent with the agency's definition of light work under 20 C.F.R. § 404.1567(b). (Id. at 6.) The "light work" category is described as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work,

> unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b) (2015).  McClure relies on Social Security Ruling ("SSR" or "Ruling") 83-10, (Pl.'s Mot. Summ. J. Attach. #1 Mem. P. & A. 7, ECF No. 15), which points out that the Commissioner's regulations provide that "frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday."  SSR 83-10, 1983 WL 31251, at *5.  Plaintiff argues that the ALJ's finding that McClure is limited to sitting and standing for two hours in an eight-hour day prohibits the performance of light work as that term is defined in the Social Security Ruling.  (Pl.'s Mot. Summ. J. Attach. #1 Mem. P. & A. 7, ECF No. 15)

      McClure also alleges that Judge Radensky's conclusion that Plaintiff is capable of light work is contrary to SSR 83-12, which provides that if the claimant's exertional level falls between two rules that would direct opposite conclusions, the adjudicator must consider whether the exertional capacity is significantly reduced.  (Id.)  SSR 83-12 provides "Adjudicative Guidance" for claims "in which the exertional components of the RFC are less or greater than those of a specifically defined exertional range of work."  SSR 83-12, 1983 WL 31253, at *1.  The Ruling states:

> 2.    If the exertional level falls between two rules which direct opposite conclusions, i.e., "Not disabled" at the higher exertional level and "Disabled" at the lower exertional level, consider as follows:
>
> a. An exertional capacity that is only slightly reduced in terms of the regulatory criteria could indicate a sufficient remaining occupational base to satisfy the minimal requirements for a finding of "Not disabled."
>
> b. On the other hand, if the exertional capacity is significantly reduced in terms of the regulatory definition, it could indicate little more than the occupational base for the lower rule and could justify a finding of "Disabled."
>
> c. In situations where the rules would direct different conclusions, and the

>individual's exertional limitations are somewhere "in the middle" in terms of the regulatory criteria for exertional ranges of work, more difficult judgments are involved as to the sufficiency of the remaining occupational base to support a conclusion as to disability. Accordingly, VS [vocational specialist] assistance is advisable for these types of cases.

Id. at *2-3. Plaintiff argues that in light of SSR 83-12, it was error for the ALJ to presume that McClure was capable of the higher "light" RFC designation. (Pl.'s Mot. Summ. J. Attach. #1 Mem. P. & A. 7, ECF No. 15.)

Plaintiff's cites two cases where the district courts found that a two-hour standing or walking limitation was inconsistent with a light work capacity. (Id. at 8-9.) In Merritt v. Colvin, No. 3:14-cv-05964-KLS, 2015 WL 4039355, at *2 (W.D. Wash. July 2, 2015), the ALJ found that a claimant who could sit for six hours and stand or walk for two hours in an eight-hour day was able to perform light work and thus was not disabled. The court reversed and remanded for further proceedings, finding that "the limitation to standing/walking for two hours and sitting for six hours in an eight-hour workday, better coincides with the sedentary exertional work level." Id. at *6. The Merritt court explained:

>[T]he Commissioner's own rulings and policy guidelines recognize that where a claimant's exertional capacity is either significantly or only slightly reduced such that it essentially coincides with the lower or higher rule respectively, that rule should be applied and a determination made on that basis. Such is the case here. That is, given, also as discussed above, the significant reduction in the ability to stand/walk the ALJ found plaintiff had—and the fact that the ability to stand/walk is the major difference between sedentary and light work—the ALJ should have consulted the lower, sedentary rules first before relying on the vocational expert's testimony.

Id. at *7. In another case, Campbell v. Astrue, the ALJ found that a fifty-one-year-old claimant could sit for up to eight hours in an eight hour workday and stand and walk for no more than one to two hours in an eight-hour workday. Campbell v. Astrue, Civ. Action No. 09-5356, 2010 WL 4689521, at *1, *3 (E.D. Pa. Nov. 2, 2010). The ALJ concluded that the claimant could perform a narrowed range of light work and sought

1 vocational expert testimony concerning the work Campbell could perform. Id. at *3.
2 After the vocational expert identified the relevant jobs, the ALJ held that the claimant
3 was not disabled. Id. The magistrate judge recommended that the Commissioner's
4 decision be reversed and the matter remanded for further proceedings. Id. at *11.

> [T]he ALJ's finding that his RFC allowed for a "narrowed range of light work" is problematic in two senses. First, the ALJ's characterization of Plaintiff's exertional capabilities as within the range of "light work" is incongruent with the ALJ's particularized finding that Campbell is limited with respect to standing and walking. As SSR 83–10 explains, a job is in the "light" category "when it requires a good deal of walking or standing," and this is "the primary difference between sedentary and most light jobs," with the exception of sitting jobs requiring pushing or pulling of arm or leg controls and not applicable here. Second, the principal finding as to Campbell that corresponded with the exertional capabilities at the "light" level was the finding about the amount of weight he could lift: up to 20 lbs. occasionally and 10 lbs. frequently. See 20 C.F.R. § 404.1567(b) (characterizing light work as "involv[ing] lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighting up to 10 pounds"). In order for someone to be able to "lift or carry" objects of a particular weight on a "frequent" basis, however, that individual would need to be able to walk and stand for a much larger portion of the day than the "no more than one to two hours in an eight hour work day" of which the ALJ found Campbell to be capable. . . . . There is thus an inherent contradiction between the ALJ's finding that Campbell could "frequently" lift or carry 10 lbs.—which, pursuant to SSR 83–10, would require Campbell to be on his feet for between approximately 3 to 6 hours of an 8–hour workday—and his finding that Campbell had the capacity to perform work requiring "standing or walking for no more than one to two hours in an eight hour work day."

Id. at *5 (footnotes omitted) (citation omitted). McClure argues that the facts of her case are analogous to those in Campbell and Merritt. (See Pl.'s Mot. Summ. J. Attach. #1 Mem. P. & A. 8-9, ECF No. 15.) Plaintiff also contends that although the vocational expert identified jobs described as light in the Dictionary of Occupational Titles ("DOT"), those occupations better match the agency's definition of sedentary jobs. (Id. at 9-10.) McClure claims that the ALJ could not properly rely on the DOT's description

of a job if it conflicts with the regulatory definition of an exertional level required for the job. (Id. at 10 n.1.)

In response, the Commissioner argues that the RFC finding of light work is supported by substantial evidence despite the ALJ limiting McClure's standing and walking ability to two hours per day. (Def.'s Cross-Mot. Summ. J. & Supp. Mem. P. & A. Opp'n Pl.'s Mot. Summ. J. 13-15, ECF No. 19.) Defendant contends that agency authority directs the ALJ to obtain vocational expert testimony where the claimant's RFC falls between two exertional categories. (Id. at 15.) Commissioner Colvin relies on SSR 83-12, which advises employing vocational expert testimony in cases where the "individual's exertional limitations are somewhere 'in the middle' in terms of the regulatory criteria for exertional ranges of work . . . ." SSR 83-12, 1983 WL 31253, at *3 (1983). Defendant cites the Ninth Circuit's decision in Moore v. Apfel, 216 F.3d 864 (9th Cir. 2000), to support the argument that use of vocational expert testimony is appropriate when a claimant's exertional limitations fall between the light and sedentary categories. (Def.'s Cross-Mot. Summ. J. & Supp. Mem. P. & A. Opp'n Pl.'s Mot. Summ. J. 17, ECF No. 19.)

In her Reply, McClure points out that the Commissioner did not address the cases cited by Plaintiff where the district courts reversed the agency decision in similar factual circumstances. (See Pl.'s Reply 3, ECF No. 21.) She also argues that the Moore case cited by the Defendant did not address Plaintiff's standing and walking limitation of two hours. (Id. at 4.) Moore considered a claimant who was limited to sitting four to six hours in an eight-hour day, and there was no indication whether the plaintiff was limited in his standing or walking abilities. (Id. n.2.) Thus, McClure argues that the Moore decision is not analogous to her case, "where Plaintiff's standing/walking abilities [two hours] match only the regulatory definition for sedentary work." (Id. at 4.)

The Court agrees that McClure's limitation to two hours of standing or walking falls within the agency's definition of sedentary work. The Social Security Administration regulations describe "sedentary work" as follows:

12

>Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a). "Since being on one's feet is required "occasionally" at the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday." Social Security Ruling ("SSR") 83-10, 1983 WL 31251, at *5 (Jan. 1, 1983) (glossary description of "sedentary work").

In McClure's case, the ALJ expressly found that Plaintiff is limited to standing or walking for no more than two hours in an eight-hour day. The agency's definition of light work, however, requires a good deal of walking or standing, including standing or walking approximately six hours every workday. See id. (glossary description of "light work"). Given these requirements, as well as Plaintiff's undisputed exertional limitations, the ALJ's RFC determination is inconsistent with the definition of light work. See Campbell v. Astrue, 2010 WL 4689521, at *5 (noting that the ALJ's characterization of Plaintiff's exertional capabilities as within the range of "light work" is incongruent with the particularized finding of limitation with respect to standing and walking). McClure's exertional limitations are closer to sedentary work than light work; her limitations do not fall "somewhere in the middle." For these reasons, the Court finds that the ALJ's RFC finding that McClure can perform light work was not supported by the record in this case.

### 3. The Treating Physician's Opinion

McClure's treating physician, Dr. Roberts, completed a capacity assessment of Plaintiff and described her pain as daily and severe, especially with standing or activity. (Admin. R. 464, ECF No. 13.) The treating physician limited McClure's standing or walking to two hours per eight-hour work day and also indicated she would need to take a

fifteen minute break every hour. (Id. at 466.) Dr. Roberts restricted Plaintiff to lifting no more than ten pounds. (Id. at 467.)

The ALJ considered Dr. Roberts's opinion and stated:

> Little weight is given to the medical source statement of Pomai Roberts, M.D., dated July 8, 2013. Dr. Roberts' opinion included limitations precluding the claimant from carrying 10 pounds and indicated the claimant could rarely lift less than 10 pounds. Such extreme limitations are not consistent with the above-discussed evidence or the State agency's determinations. Further, Dr. Roberts failed to cite to any treatment notes or direct objective findings in support of that opinion. Rather, Dr. Roberts merely recited the claimant's diagnosis and subjective complaints of pain. (Ex. 8F). Thus, little weight is given to Dr. Roberts' opinion as it [is] inconsistent with the record as a whole, the State agency's opinion, and is not supported by any specific evidence.

(Id. at 20.)

At the same time, the ALJ gave "significant weight" to the determinations made by the State agency medical consultants. (See id.) The ALJ wrote, "Based on a review of all available evidence at the time of the determination, the State agency medical consultant assessed the claimant was capable of light exertional work. The undersigned agrees with these opinions as they are mostly consistent with the above-described evidence." (Id. (citations omitted).)

McClure argues that the ALJ improperly rejected the treating physician's assessment regarding the lifting limitation of ten pounds. (Pl.'s Mot. Summ. J. Attach. #1 Mem. P. & A. 10-11, ECF No. 15.) Plaintiff contends that the ALJ did not rely on clear and convincing reasons in rejecting the physician's opinion. (Id. at 12-13.) McClure argues that the ten-pound limitation is legally significant because, when combined with the standing and walking limitation, it is consistent only with the sedentary work level. (Id. at 12.)

The standard for determining whether an ALJ properly rejected the opinion of a treating physician varies. If the treating doctor's opinion is not contradicted by another physician, the ALJ must give clear and convincing reasons for rejecting it. Thomas v.

Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); see also Spelatz v. Astrue, 321 F. App'x 689, 692 (9th Cir. 2009). On the other hand, if the treating physician's opinion is contradicted, "[t]he ALJ must give specific, legitimate reasons for disregarding the opinion of the treating physician.'" Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004) (quoting Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir. 1992)); see also Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007). An ALJ may discredit opinions "that are conclusory, brief, and unsupported by . . . objective medical findings." Batson, 359 F.3d at 1195. Generally, more weight is given to the opinions of treating physicians because they "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

In assigning little weight to the opinion of the treating physician, the ALJ characterized Dr. Roberts's restrictions as "extreme limitations" inconsistent with the agency's determinations. (Admin. R. 20, ECF No. 13.) The lifting and carrying limitations imposed by the treating physician differ from the RFC assessment conducted by the non-treating source the ALJ cited. (See id. at 60.) The state agency medical consultant assessed McClure as being capable of lifting twenty pounds occasionally, and ten pounds frequently. (Id.) McClure's treating physician opined that she could lift and carry up to ten pounds "rarely." (Id. at 467.) Dr. Roberts also assessed Plaintiff as being able to stand or walk for up to two hours, (id. at 466), while the agency consultant opined that Plaintiff could stand or walk for six hours in an eight-hour day. (Id. at 60.) The different conclusion reached by the state agency medical professional did not justify the ALJ's discounting of the treating physician's opinion. See Orn v. Astrue, 495 F.3d at 632 ("When an examining physician relies on the same clinical findings as a treating physician, but differs only in his or her conclusions, the conclusions of the examining physician are not 'substantial evidence.'"). To the extent there was a conflict between

Dr. Roberts's evaluation and the non-treating source assessment, the ALJ failed to give specific and legitimate reasons supported by substantial evidence in the record for discounting the treating physician's opinion. Lester, 81 F.3d at 830.

Despite accepting the treating physician's opinion regarding McClure's standing and walking ability, Judge Radensky rejected the lifting limitation on the basis that it was not supported by "direct objective findings." (Admin. R. 20, ECF No. 13.) McClure argues that this does not constitute clear and convincing reasons for discrediting Dr. Roberts's opinion. (Pl.'s Mot. Summ. J. Attach. #1 Mem. P. & A. 14, ECF No. 15.) Plaintiff claims that there is no objective test to assess lifting ability and that the state medical consultant did not apply any such test. (Id. n.3.) Defendant argues that the ALJ provided sufficient reasons for rejecting the opinion of Dr. Roberts because the treating physician's assessment was "the classic check-box form and did not cite to treatment records . . . ." (Def.'s Cross-Mot. Summ. J. & Supp. Mem. P. & A. Opp'n Pl.'s Mot. Summ. J. 11, ECF No. 19.)

"Disability may be proved by medically-acceptable clinical diagnoses, as well as by objective laboratory findings." Day v. Weinberger, 522 F.2d 1154, 1156 (9th Cir. 1975) (citing 42 U.S.C. § 423(d)(3)); see also Montijo v. Sec'y of Health & Human Servs., 729 F.2d 599, 601 (9th Cir. 1984) (noting that the ALJ's reliance on the inability of physicians to support their findings with objective laboratory findings does not constitute a legally sufficient reason for rejecting their conclusions) (citation omitted). "[T]he opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1996). "Because treating physicians are employed to cure and thus have a greater opportunity to know and observe the patient as an individual, their opinions are given greater weight than the opinions of other physicians." Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).

The ALJ erred in assigning less weight to the treating physician's opinion. The ALJ referenced a medical record titled "Physical Residual Functional Capacity Form"

which contains both "check-box" type questions and blank spaces for the physician to enter comments. (Admin. R. 463-68, ECF No. 13.) The treating physician filled out the appropriate fields by providing the diagnosis, description of pain symptoms, and current medications. (Id. at 463-65.) Dr. Roberts also answered the questions on the form by selecting the choices provided in the boxes. (Id.) The medical record in this case is consistent with the treating physician's findings and opinions. The record demonstrates that the lifting restriction imposed by Dr. Roberts is adequately substantiated. Because Dr. Roberts's opinion was supported by substantial evidence in the record, it was error for the ALJ to give it little weight. For these reasons, the Court finds that the ALJ's decision should be reversed.

    4.   Remedy

The court has discretion to remand a case either for additional evidence and findings or to award benefits. Smolen v. Chater, 80 F.3d 1273, 1292 (9th Cir. 1996). McClure argues that the ALJ's decision should be reversed and the case remanded to the agency for further proceedings. (Pl.'s Mot. Summ. J. Attach. #1 Mem. P. & A. 10-11, ECF No. 15.) The Commissioner disagrees that the Court should reverse the ALJ's decision, but urges that if the agency is reversed, the proper remedy would be to remand for further administrative proceedings. (Def.'s Cross-Mot. Summ. J. & Supp. Mem. P. & A. Opp'n Pl.'s Mot. Summ. J. 19, ECF No. 19.) Both sides agree that in the event of a reversal, the proper remedy is a remand. Accordingly, the Court finds that this case should be reversed and remanded for additional proceedings.

## IV.   CONCLUSION

For the reasons stated above, Plaintiff's Motion for Summary Judgment be **GRANTED**, Defendant's Cross-Motion for Summary Judgment be **DENIED**, and the case be **REMANDED** for further proceedings.

This Report and Recommendation will be submitted to the United States District Court Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Any party may file written objections with the Court and serve a copy on all parties on or

1  before August 24, 2016.  The document should be captioned "Objections to Report and
2  Recommendation."  Any reply to the objections shall be served and filed on or before
3  August 31, 2016.  The parties are advised that failure to file objections within the
4  specified time may waive the right to appeal the district court's order.  <u>Martinez v. Ylst</u>,
5  951 F.2d 1153 (9th Cir. 1991).

Dated:  August 9, 2016

_____
Hon. Ruben B. Brooks
United States Magistrate Judge